FILED

2024 Sep-30  AM 10:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| VINCENT LONG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:22-cv-00080-SGC |
| | ) | |
| WAL-MART STORES EAST, LP, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

Vincent Long (the "plaintiff"), brought this action against Wal-Mart Stores East, LP (the "defendant"), asserting state law tort claims.[2]  (Doc. 1-1 at 8-17).[3]  The case is before the court on the defendant's motion for summary judgment.  (Doc. 31).  The parties have briefed the motion fully, and it is ripe for review.  (Docs. 33, 35-1, 40, 42).  For the reasons stated below, the court will grant the motion and dismiss this action with prejudice.

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 10).

[2] Jurisdiction is based on diversity of citizenship.  (Doc. 1).

[3] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __).

## I.    Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he [district] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The party seeking summary judgment bears the initial burden of informing the district court of the basis for its motion and identifying those portions of the record the party believes demonstrate the absence of a genuine dispute of material fact.  *Celotex Corp.*, 477 U.S. at 323.  If the moving party carries its initial burden, the non-movant must go beyond the pleadings and come forward with evidence showing there is a genuine dispute of material fact for trial.  *Id.* at 324.

The substantive law identifies which facts are material and which are irrelevant.  *Anderson*, 477 U.S. at 248.  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-movant.  *Id.* at 248.  If the evidence is merely colorable or not significantly probative, summary judgment is appropriate.  *Id.* at 249-50 (internal citations omitted).  All reasonable doubts about the facts should be resolved in favor of the non-movant, and all justifiable inferences should be drawn in the non-movant's favor.  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

2

II.     **Summary Judgment Facts**[4]

The plaintiff entered a Walmart Neighborhood Market in the Center Point area of Birmingham, Alabama, on December 21, 2019, to get something to eat.  (Doc. 32-1 at 24, 29).  Ashley Agee was working in the store on that date as a Team Associate.  (Doc. 32-2 at 2).  She was in her twenties.  (Doc. 32-1 at 68; Doc. 32-3 at 18; Doc. 32-4 at 27).  According to the plaintiff, then a 58-year-old youth deacon who promoted financial literacy amongst the youth at his church, he told Agee he could "rock [her] world" with knowledge about making money through stock market investments.  (Doc. 32-1 at 14, 34-35, 68).

Agee did not connect the comment about "rock[ing] [her] world" with an offer to educate her about stock market opportunities.  She interpreted the comment as sexual and otherwise inappropriate.   (Doc. 32-2 at 2).   It made her feel uncomfortable.  (Doc. 32-2 at 2).  She told her Team Lead, Tashaka Leeth, who told the Store Manager, Tracy Smelcer.  (Doc. 32-2 at 2; Doc. 32-3 at 13).

Smelcer asked the plaintiff to leave the store, but the plaintiff refused.  (Doc. 32-4 at 19).   Leeth then called the Jefferson County Sheriff's Department and reported that a customer was harassing employees by directing sexual comments toward them.  (Doc. 42-1 at 2).  The purpose of involving law enforcement officers

---

[4] The following facts are undisputed, unless otherwise noted.  The court views the facts in the light most favorable to the plaintiff, as the non-movant, and gives the plaintiff the benefit of all reasonable inferences.

was to obtain assistance in removing the plaintiff from the store. (Doc. 32-3 at 17; Doc. 32-4 at 20). Agee did not pursue charges against the plaintiff. (Doc. 32-2 at 3). Neither did Leeth, Smelcer, or any other employee of the defendant. (Doc. 39-1 at 3).

Deputies Maddox and Cleveland responded to Leeth's call. (Doc. 32-5 at 4).[5] They approached the plaintiff and told him a female employee had complained he had directed inappropriate comments toward her. (Doc. 32-5 at 4). Smelcer informed the plaintiff he was not allowed back in the store. (Doc. 32-4 at 21; Doc. 32-5 at 4). The plaintiff became upset and stated he wanted to "face his accuser." (Doc. 32-5 at 4). Deputy Maddox denied that request and asked the plaintiff to produce identification, but the plaintiff refused. (Doc. 32-5 at 4). Deputy Maddox then arrested the plaintiff for obstructing governmental operations by refusing to produce identification. (Doc. 32-5 at 4). Because the plaintiff struggled when Deputies Maddox and Cleveland were attempting to place him in handcuffs, Deputy Maddox also charged the plaintiff with resisting arrest. (Doc. 32-5 at 4). The criminal charges against the plaintiff ultimately were dismissed. (Doc. 32-10 at 2).

Based on the events described above, the plaintiff enumerates four claims against the defendant in his complaint: defamation, harassment, negligence, and false imprisonment. (Doc. 1-1 at 11-15). The negligence claim is based on

---

[5] A third deputy – Deputy Norris – arrived on the scene at some point. (Doc. 32-5 at 4).

allegations the defendant "negligently or wantonly executed[] [and] managed the [] store," "negligent or wantonly made misrepresentations regarding the nature of the [p]laintiff's communication with [the] [defendant's] [] employees," and "negligently or wantonly made misrepresentations regarding [the] [p]laintiff's legal ability to enter and remain within the . . . store." (Doc. 1-1 at 14). The court construes these allegations as asserting one claim for negligent or wanton training and supervision and another claim for negligent or wanton misrepresentation.

## III. Discussion

### A. Defamation

The elements of a defamation claim under Alabama law are (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication of the statement to a third party, (3) fault amounting to at least negligence on the part of the defendant, and (4) either actionability of the statement irrespective of special harm or special harm caused by publication of the statement. *Wal-Mart Stores, Inc. v. Smitherman*, 872 So. 2d 833, 840 (Ala. 2003). The qualified privilege codified at § 13A-11-161 of the Alabama Code is an affirmative defense to a defamation claim, *Luxottica of America, Inc. v. Bruce*, 389 So. 3d 1127, 1133 (Ala. 2023), and one invoked by the defendant in this case. The privilege immunizes a defendant from liability for "[t]he publication of a fair and impartial report . . . of any charge of crime made to any judicial officer or body." § 13A-11-161. The Alabama Supreme Court

5

has applied the privilege to situations in which store employees have reported suspected shoplifters to law enforcement officers. *Dolgencorp, LLC v. Spence*, 224 So. 3d 173, 187 (Ala. 2016) (collecting cases).

The privilege is qualified insofar as malice on the part of the defendant will defeat its application. *Bruce*, 389 So. 3d at 1133. The malice required to defeat the privilege is "common law actual malice." *Id.* at 1134. Common law actual malice "indicates a specific intent to injure" and is established by "evidence of previous ill will, hostility, threats, [or] rivalry," "former libels or slanders," "[the] violence of the defendant's language," "the mode and extent of publication," or "proof of the recklessness of the publication and prior information regarding its falsity." *Id.* (internal quotation marks omitted).

"[T]o be clear, truth is not the test to determine whether the fair-report privilege applies." *Jones v. BuzzFeed, Inc.*, 591 F. Supp. 3d 1127, 1151 (N.D. Ala. 2022). The privilege protects against liability for publication of a false statement – even a false statement that is defamatory – provided publication was not made with malice. The plaintiff bears the burden of proving malice. *Bruce*, 389 So. 3d at 1134.

The court construes the plaintiff's argument to be that the defendant defamed him when one or more of its employees reported to law enforcement officers that the plaintiff was making inappropriate sexual comments inside the store. Assuming for present purposes the plaintiff has come forward with evidence to support each

element of a claim for defamation, § 13A-11-161 nonetheless shields the defendant from liability unless the plaintiff also has come forward with evidence the defendant acted with malice. He has not. The record simply lacks any evidence the defendant had a "specific intent to injure" the plaintiff when it made the report to law enforcement officers.

### B.    Harassment

Harassment is not a tort under Alabama law. *Edwards v. Prime, Inc.*, 2008 WL 9393800, at *11 (N.D. Ala. Dec. 11, 2008); *Wade v. City of Oakman*, 2010 WL 11565306, at *12 (N.D. Ala. May 10, 2010). However, it is possible harassment might be actionable as the tort of outrage. *Wade*, 2010 WL 11565306, at *12. The Alabama Supreme Court recognized the tort of outrage in *American Road Serv. Co. v. Inmon*, 394 So. 2d 361 (Ala. 1980). To prevail on a claim for the tort of outrage, a plaintiff must show the defendant's conduct (1) was intentional or reckless, (2) was extreme and outrageous, and (3) caused emotional distress so severe that no reasonable person could be expected to endure it. *Harrelson v. R.J.*, 882 So. 3d 317, 322 (Ala. 2003). Extreme and outrageous conduct is "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* (internal quotation marks omitted).

The Alabama Supreme Court has recognized the tort of outrage with regard to only three kinds of conduct: "(1) wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment." *Little v. Robinson*, 72 So. 3d 1168, 1172 (Ala. 2011) (internal quotation marks omitted). The tort can be viable outside the context of these circumstances. *Wilson v. Univ. of Alabama Health Servs. Foundation, P.C.*, 266 So. 3d 674, 677 (Ala. 2017). However, the tort is an "extremely limited cause of action," *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000), constrained by the standard articulated above.

The court construes the plaintiff's argument to be that it was outrageous for the defendant, through Agee, Leeth, and Smelcer, to accuse him of making inappropriate sexual comments inside the store and, based on the accusation, have him removed from the store because the comments underlying the accusation were not sexual or otherwise inappropriate but, instead, pertained to his efforts as a youth deacon to promote financial literacy among young people. The alleged outrageousness, therefore, lies in the interpretation – or misinterpretation, as the case may be – of the plaintiff's comments. There is no evidence the interpretation of the comments by Agee, the employee to whom the plaintiff directed them, was other than genuine or that Leeth or Smelcer had any reason to question Agee's interpretation. Therefore, at most, Agee, Leeth, and Smelcer relied in good faith on

an honest misinterpretation when they accused the plaintiff of impropriety and had him removed from the store.  Under these circumstances, their actions clearly did not exceed "all possible bounds of decency."

### C.    Negligent or Wanton Training and Supervision

The torts of negligent or wanton training and supervision require a plaintiff to show an employee knew or should have known its employee was incompetent. *Armstrong Bus. Servs. v. AmSouth Bank*, 817 So. 2d 665, 682 (Ala. 2001) (negligent or wanton supervision); *Pritchett v. ICN Med. All., Inc.*, 938 So. 2d 933, 940 (Ala. 2006) (negligent training and supervision).  There is no evidence that would support a finding the defendant had actual or constructive knowledge Agee, the Team Lead, or the Store Manager was incompetent.

### D.    Negligent or Wanton Misrepresentation

A misrepresentation claim requires proof of (1) a misrepresentation of material fact, (2) "made willfully to deceive, recklessly, without knowledge, or mistakenly," (3) on which the plaintiff justifiability relied, and (4) which was the proximate cause of damage to the plaintiff.  *Bryant Bank v. Talmage Kirkland & Co., Inc.*, 155 So. 3d 231, 238 (Ala. 2014).  "In Alabama it is not always necessary to prove that a misrepresentation was made directly to the person who claims to have been injured."  *Delta Health Grp., Inc. v. Stafford*, 887 So. 2d 887, 899 (Ala. 2004) (internal quotation marks omitted).  "[I]n certain limited circumstances . . . a plaintiff

may properly state a fraud claim even though the defendant makes a false representation to a third party rather than to the plaintiff." *Id.* Even so, a plaintiff still must establish his reliance on the misrepresentation. *Id.* The plaintiff in this case has not shown he relied to his detriment on the alleged misrepresentation made to law enforcement officers regarding comments he made inside the store or the alleged misrepresentation made to him regarding his ability to patronize the store.

### E.    False Imprisonment

False imprisonment is "the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala. Code § 6-5-170. Someone other than the person who makes an arrest or otherwise effects a detention may be liable for false imprisonment if he or she instigates or participates in the act. *Crown Cent. Petroleum Corp. v. Williams*, 679 So. 2d 651, 654 (Ala. 1996); *Dolgencorp, Inc. v. Pounders*, 912 So. 2d 523, 528 (Ala. Civ. App. 2005). Neither the "good faith act of giving information to a police officer tending to show that a crime has been committed" nor the "good faith act of identifying one suspected of a crime" constitutes instigation or participation in an arrest or other detention that will expose a person to liability for false imprisonment. *Williams*, 679 So. 2d at 654.

> Instigation consists of words or acts which direct, request, invite or encourage the false imprisonment itself. In the case of an arrest, it is the equivalent, in words or conduct, of "Officer, arrest that man!" It is not enough for instigation that the actor has given information to the police about the commission of a crime, or has accused the other of

> committing it, so long as he leaves to the police the decision as to what
> shall be done about any arrest, without persuading or influencing them.

RESTATEMENT (SECOND) OF TORTS § 45A cmt. c. (quoted favorably in *Pounders*).

The defendant's employees did not themselves detain the plaintiff. They sought to effectuate the opposite of detention: expulsion. The only detention of the plaintiff was effectuated by the law enforcement officers who responded to Leeth's call for assistance in relation to the plaintiff, who Leath reported was harassing employees by directing sexual comments toward them.[6] That report falls far short of the conduct required to impose liability for false imprisonment on someone other than the person who effects a detention.

### F.   The Plaintiff's Arguments

The plaintiff framed his arguments opposing summary judgment in such a way that the court could not address them in a coherent manner within the framework above. The court addresses them below instead.

The plaintiff first argues factual disputes regarding the meaning of his comments to Agee and whether he tried to kiss her precludes summary judgment on his claims. (Doc. 35-1 at 2-4).[7] This argument is without merit. The plaintiff's

---

[6] There is no question the plaintiff was detained at the point at which officers placed him under arrest. The court assumes for present purposes the plaintiff also was detained when officers were questioning him before the arrest.

[7] Agee states in an affidavit submitted in support of the defendant's summary judgment motion that, in addition to directing inappropriate comments toward her, the plaintiff tried to kiss her on

claims fail for reasons independent of the meaning of the plaintiff's comments to Agee or whether he tried to kiss her.  Those reasons are discussed above.  In other words, the plaintiff may have identified disputed facts, but those disputed facts are not material.

The plaintiff next asserts no one told law enforcement officers he attempted to kiss Agee and argues that absent that detail the defendant "had no good faith basis for causing the investigation and subsequent arrest of [the plaintiff]."  (Doc. 35-1 at 4).  The court struggles to follow the logic of this argument.  All the court can say is that the omission of a statement the plaintiff contends is false from the report made to law enforcement officers could not have caused any harm to the plaintiff and, as stated, the validity of the allegations the plaintiff harassed Agee by directing sexual comments toward her and tried to kiss her is immaterial to disposition of the plaintiff's claims.

Finally, the plaintiff asserts the defendant failed to prosecute the charges against him and argues that failure shows the defendant knew his arrest was without merit and requires survival of his malicious prosecution claim.  (Doc. 35-1 at 5-6).  The plaintiff was charged with obstructing governmental operations for refusing to produce identification and resisting arrest.  The charges were pressed by Deputy

---

the cheek.  (Doc. 32-2 at 2).  Smelcer did not know that detail until after this lawsuit was filed, and the detail does not appear in the police report of the incident.  (Doc. 32-5 at 4; Doc. 39-1 at 2).

Maddox, not the defendant.  The defendant did not press charges of any kind against the plaintiff.  Neither the defendant nor any of its employees were named as parties, witnesses, or victims in relation to the charges, and they were not issued notices of any kind in connection with the charges.  (Doc. 39-2 at 2-3; Doc. 39-3 at 2-3).  In short, the defendant's failure to appear or otherwise participate in the plaintiff's criminal prosecution had nothing to do with the ultimate dismissal of the charges. Moreover, the plaintiff has not pleaded a malicious prosecution claim against the defendant and has never sought to amend his complaint to add a malicious prosecution claim.

## IV.    Conclusion

For the reasons stated above, the court will **GRANT** the defendant's motion for summary judgment (Doc. 31) and **DISMISS** this action **WITH PREJUDICE**. A separate order will be entered.

**DONE** this 30th day of September, 2024.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE

13